IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MEGAN COFFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-426-D |
| ) | |
| AVEM BUSINESS SOLUTIONS, LLC; ) | |
| AVEM HEALTH PARTNERS, INC.; and ) | |
| RHA STROUD, INC. d/b/a STROUD ) | |
| REGIONAL MEDICAL CENTER, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Plaintiff's Motion to Compel Discovery with Authority [Doc. No. 58]. Defendants filed a Response and Objection to Plaintiff's Motion to Compel with Authority [Doc. No. 59], and Plaintiff filed a Reply [Doc. No. 63]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff alleges that while employed by Avem Business Solutions, LLC, she was sexually harassed and wrongfully terminated for opposing sexual harassment. Defendants allege that Plaintiff's tenure as lab supervisor was riddled with issues, employee complaints, and policy violations. Defendants further allege that these issues led to Defendants offering Plaintiff a demotion to lab technician, which she declined, leading to her termination.

In her motion, Plaintiff moves pursuant to FED. R. CIV. P. 37 for an order compelling Defendants to fully respond to one interrogatory regarding the reasons for Plaintiff's

1

termination and three requests for production of documents. Although Plaintiff's motion to compel also referenced a dispute as to which Defendant employed Plaintiff, the parties have since stipulated that Defendant Avem Business Solutions, LLC was Plaintiff's employer and that ABS is an "employer" as defined by 42 U.S.C. § 2000e(b) [Doc. No. 62]. As a result, Plaintiff has withdrawn her request for Defendants to supplement their responses to requests for production 19 – 22 [Doc. No. 63, at p. 6]. The parties' remaining disputes are addressed below.[1]

## LEGAL STANDARD

Pursuant to FED. R. CIV. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." The considerations that bear on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Thus, relevance for purposes of discovery remains broader than relevance for purposes of trial admissibility. Discovery is not, however, intended to be a "fishing expedition." *McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002). "[B]road discovery is not without limits and

---

[1] For the remaining issues, the subject supplemental discovery responses were issued by ABS, which was formerly known as First Physicians Services, LLC. Throughout her motion to compel, Plaintiff uses "defendant" in the singular form. Accordingly, where this Order references a singular Defendant, the Court refers to ABS.

the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (quotations and citation omitted). When the request is overly broad, or relevance is not clear, the party seeking the discovery has the burden to show the relevance of the request. *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. Nov. 17, 2010).

## DISCUSSION

I.   Interrogatory No. 1

Plaintiff alleges that Defendant's supplemental response to Interrogatory No. 1 is deficient. Interrogatory No. 1 requested:

> Set out fully each 'reason for termination' … of the Plaintiff including the dates, places and material circumstances making up each reason, including setting out as close to verbatim as possible each communication materially related to the reasons for terminat[ion] and identifying the parties to each communication.

[Doc. No. 58-3, at p. 6]. Initially, Defendant responded that "Plaintiff was asked to step down as the supervisor of the lab because of issues with her ability to supervise. Under her leadership, the lab received low marks on its CLIA inspection, there were issues with food in the lab, and general issues with the running of the lab." [Doc. No. 58-3, at p. 6]. Thereafter, Defendant supplemented its response as follows:

> … It was not [Defendant's] intention to terminate Plaintiff. [Defendant] felt that Plaintiff was unable to continue as the manager of the laboratory, and requested that she accept a demotion to laboratory technician. Contrary to assertion by Plaintiff, this position did not require overnight shift work. Plaintiff's record with [Defendant] was not unmarred. Plaintiff was promoted from lab tech to team lead in December of 2014. In January 2015, Plaintiff was being disciplined regarding the language that she was using in the lab and being advised that she needed to treat everyone with respect

> and courtesy. The CEO at the time offered to help Plaintiff develop her leadership skills. Plaintiff was ultimately promoted to Lab Supervisor in May of 2015. In November 2016, she was again being coached about treating the employees fairly and with respect. Though leadership was not Plaintiff's best quality, the lab ran well enough. In late 2020 through early 2021, problems began to arise, complaints were made regarding disregard of company policies and lab standards regarding behavior and extraneous items in the lab. Multiple employees complained of unfair treatment. In February 2021, Plaintiff was disciplined relative to the fact that food and other inappropriate items were being kept in parts of the lab where they could contaminate samples and tests. As part of this discipline, Plaintiff was reminded of the need to treat all employees fairly. During this time, Plaintiff tendered her resignation, but she withdrew it the next day following what was deemed a good conversation with Mr. Waters. [Defendant] wanted to support Plaintiff in adding to her skillset to make the changes needed to effectively supervise the lab which was reflected in the poor showing under the CLIA review. Unfortunately, over the next few months there was no evidence that Plaintiff was exercising any better management of the lab, and she was asked to return to her former position as a lab tech.

[Doc. No. 59-1, at p. 5]. Despite Defendant's supplement to its response to Interrogatory No. 1, Plaintiff alleges in her motion to compel that Defendant refused to supplement its response and included only Defendant's initial answer for the Court's consideration [Doc. No. 58, at p. 5].

In her reply, Plaintiff notifies the Court that she mistakenly failed to reference Defendant's supplemental response in her motion, but that Defendant's supplement still fails to identify specific reasons for Plaintiff's termination. Although the Court acknowledges Defendant's substantive supplemental response, Defendant is ordered to further supplement its response to include: 1) the identities of individuals who complained about Plaintiff in late 2020 through early 2021; 2) the approximate date and form of each complaint (in person, in writing, etc.); and 3) any specific company policies or lab

4

standards that Plaintiff allegedly violated or that were the subject of employees' complaints regarding Plaintiff's performance as lab supervisor.

II.     Requests for Production 3 and 4

In its response, Defendant represents that all responsive documents have been produced in response to Requests for Production 3 and 4. Plaintiff appears to accept Defendant's representation. However, Plaintiff references an August 3, 2021 e-mail from Aurora McKinney of A&J Laboratory Consultants in which she requests an "update on the patient remediations" and states that a copy of the deficiency report for Defendant's Stroud lab will be returned for Defendant's records [Doc. No. 63, at pp. 3-4]. Based on the content of this e-mail, it is reasonable for Plaintiff to request additional confirmation that all responsive material has been produced. In light of the August 3 e-mail [Doc. No. 58-4], Defendant is ordered to confirm to Plaintiff in writing that all responsive documents have been produced and, if Defendant discovers additional responsive documents, produce the same.

III.    Request for Production 12

Plaintiff seeks an order compelling Defendant to provide the personnel records of the lab supervisors of Defendant's Anadarko and Fairfax lab locations. Plaintiff argues the information is necessary to determine whether the lab supervisors are "similarly situated" to Plaintiff, who ran Defendant's lab in Stroud. In support of her motion to compel, Plaintiff argues that the lab supervisors in Anadarko and Fairfax held the same title as Plaintiff; that deficiency reports were issued for the Stroud, Anadarko, and Fairfax laboratories; that Defendant's human resources department oversaw the Stroud, Anadarko, and Fairfax

5

laboratories; and that Defendant has alleged in this litigation that the human resources department is partially responsible for the decision to remove Plaintiff from her position.

The Court agrees with Plaintiff that the personnel records of the lab supervisors for the Anadarko and Fairfax laboratories are discoverable for purposes of determining whether those lab supervisors are "similarly situated" to Plaintiff. Accordingly, Defendant is ordered to produce the requested personnel records of both lab supervisors, subject to the terms of the Protective Order previously approved in this case [Doc. No. 39].

## CONCLUSION

For these reasons, Plaintiff's Motion to Compel [Doc. No. 58] is **GRANTED in part**. Defendant shall supplement its responses to discovery as set forth herein on or before January 4, 2024.

**IT IS SO ORDERED** this 14th day of December, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge